# The President and Managers of the Pittsburgh & Allegheny Bridge Company, Plffs. in Err., v. Commonwealth of Pennsylvania.

On the trial of an indictment for unlawfully obstructing a public highway by placing and maintaining a pile of boards therein, the question whether such board pile did, or did not, occupy the highway is a question of fact for the jury.

*Held* also, that the act of incorporation of the bridge company, while it authorizes the company to occupy such land as is necessary for the completion and maintenance of its bridge, does not authorize it to take and occupy any part of a public highway for the purpose of storing material for repairs, when they may happen to become necessary on the bridge.

(Decided November 15, 1886.)

October Term, 1886, No. 124, W. D. Error to the Quarter Sessions of Allegheny County to review a judgment on conviction of maintaining a nuisance. Affirmed.

The President and Managers of the Pittsburgh & Allegheny Bridge Company were indicted at the June sessions at the court

NOTE.—For the manner of defining the limits of the highways where an obstruction is alleged to have been erected thereon, see note to Glenn v. Com. 8 Sad. Rep. 134.

of quarter sessions for maintaining a public nuisance in unlawfully obstructing a public highway called Bank lane or River avenue. The offense charged consisted in the placing and maintaining of a pile of lumber, by the defendant, 20 feet square and about 12 feet in height, upon Bank lane or River avenue, a public highway in the city of Allegheny.

The defendant claimed an acquittal on the grounds: "1. That the lumber pile does not stand upon the public highway. 2. That the ground upon which the lumber stands has been lawfully appropriated for the necessary use and protection and maintenance of the bridge and its approaches under its charter grant and privileges, and that the use to which it is now put is not unlawful.  3. That if the land has not been lawfully appropriated for the construction and protection of their property as indicated above, it is necessary to use the ground as they are doing for the continuous repair of the bridge."

The pile of lumber stood upon an artificial filling or abutment at the entrance of the bridge, where it had stood for some years past.   The commonwealth contended that Bank lane must be considered as extending from the end of the lots as laid out in the borough of Allegheny down to low-water mark of the river, and that hence the pile of boards must necessarily stand upon a portion of said lane.   The defendant company claimed that the plans put in evidence showed that Bank lane actually occupied a narrow strip of land, of varying width, extending along the top of the river bank, and that the pile of boards stood upon a filling artificially made outside of Bank lane as it existed at the time of the construction of the bridge.

The court charged the jury, *inter alia,* as follows:

"You will, therefore, consider the evidence presented and determine from it the boundary lines to the street, and if you find that the obstruction complained of is not on the street as it existed at the time the construction of this bridge began, your verdict ought to be for the defendants and would require their acquittal. .  .  .   The evidence on that point, I take it, is principally to be found in the plans which have been offered.   These plans all show Bank lane as a street, without fixing width but extending from the lot lines to the river; nor does the original use of the property between the lot lines indicate that the street did not extend from the lot lines to the river.  .  .  .   It is claimed that the present width is made by filling, and that the addition

to the width is not a portion of the original street.    I do not think this position well taken.    If the boundary on the south side was intended to be the river when the street was laid out, it would continue to be a boundary unless confined to narrower limits by some lawful means.    .   .   .    I say therefore to you that if you find that the street, as laid out at the time the bridge was built, did not include within its limits the ground upon which the lumber piled is now stored, your verdict will be one of acquittal."

In disposing of defendants' second claim for acquittal the court charged, *inter alia,* as follows:    "I do not regard it as law therefore that under the appropriation of the street for the erection of the bridge   .   .   .   the company can use it for piling lumber on, unless it be shown to be a special grant of the charter. This brings us to the third ground of defense: that the use of the ground for the piling of lumber for the repair of the bridge is necessary and is a right which by necessary implication belongs to the defendants under the authority given to build the bridge. I do not so regard the law.   .   .   .    The temporary use of the street in making repairs is lawful, but not a permanent use, with the view to repairs as they may become necessary in the future."

The commonwealth presented the following points:

1. Bank lane is a street of indefinite width and extends to the water wherever that may be, and the defendant has no right to place or maintain thereon any permanent erection obstructing the public right of travel, unless such right is given by the plain words of the charter or by necessary implication.    Affirmed.

2. The right to maintain the board pile in evidence for the purpose claimed by defendant, that is, for the repairs to the bridge, is not given to the defendant, either by the plain words of its charter or by necessary implication.    Affirmed.

The defendants presented the following points:

1. That the defendants were authorized by their charter to take and hold all such land and tenements as shall be necessary and convenient for them in the prosecution of their works, and in the maintenance of their bridge for the use of the public; that the power granted them by the legislature necessarily includes their right to occupy such portions of any street or lane as are reasonably necessary, to enable them to build and efficiently maintain their bridge and keep the same in repair.    *Ans.* The act of incorporation authorizes the company to occupy with its

bridge, piers, abutments, approaches, causeways, and walls, such land as is necessary for the completion and maintenance of its bridge, but does not authorize it to take and occupy any part of a public highway for the purpose of storing material that may be useful to it in making repairs on the bridge when repairs may happen to become necessary.

2. That if the jury are satisfied that at the date of the charter to the defendant company, Bank lane did not traverse the ground now covered by the board pile, the verdict must be for the defendant company,—that was the date at which they must ascertain the southern side of Bank lane; that the subsequent widening of said lane by filling would not make a nuisance of that which was not such at the first; that if the jury find that the board pile is on the fill made by the defendant company, supported by its wing wall, they must bring in a verdict of not guilty.    *Ans.* If the board pile does not stand on ground within the limits of Bank lane as it had been dedicated to public use at the date of the charter, the verdict should be for the defendant; that the condition of the street as to fillings, or the making of the same were possible at a later day, did not determine or fix the boundaries of the street; the question of whether or not the board pile is a nuisance depends on whether it stands upon a public street, and if by lawful authority, the fact that it stands upon the fill made by the company, supported by its wing wall, does not in itself make the company's act on that account lawful.

3. That the ownership of the highways in Allegheny, as also the land between Bank lane and the river, is in the commonwealth, and the defendant's charter authorizes the taking of such portion of it as was fairly necessary for its uses; that if the jury believe that the company did appropriate the ground covered by the board pile, the jury should bring in a verdict of not guilty. Refused.

4. That if the jury find that the ground covered by the board pile had not since the construction of the bridge been used as a thoroughfare, but has been occupied by the filling or artificial structure of the approach to the bridge, then it would not be a nuisance, within the meaning of the indictment, for the company to keep a reasonable supply of lumber thereon for the repair of the bridge.    Refused.

5. That the long occupancy by the bridge company of the ground covered by the board pile, without any objection by the

city of Allegheny or the traveling public, ought to be considered by the jury as tending to show that such occupancy was not and is not a nuisance.   Refused.

The court, MAGEE, J., concluded the charge to the jury as follows: "I therefore instruct you, as a matter of law, that under all the evidence your verdict must be one of conviction, unless you find as a fact that the lumber pile does not stand within the street lines of Bank lane as it existed at the time the bridge was built; in other words, that the street did not extend from the lot lines to the river, and in case you find that to be the fact your verdict should be one of acquittal."

The jury rendered a verdict of guilty, and defendant took this writ, assigning as error the answers to the points submitted and the concluding portion of the charge to the jury.

*George Shiras, Jr.,* for plaintiff in error.—Cited Zug v. Com. 70 Pa. 138.

*William Reardon* and *W. B. Rodgers,* for defendant in error.—Long-continued obstruction of a highway is no defense. The title of a municipal corporation for a right of way in the soil of its streets is paramount and exclusive.   No private occupancy for whatever time, either adverse or permissive, vests a title inconsistent with the public use.   See Kopf v. Utter, 101 Pa. 27.

No title can be acquired against the public by user alone, nor lost to the public by nonuser.   Stevenson's Appeal, 2 Sad. Rep. 367.

PER CURIAM:

Whether the board pile complained of did, or did not, occupy the public highway was a question that was properly left to the jury, and the points put to the court were properly answered.

Judgment affirmed, and it is ordered that the record be remitted to the court below for the purposes of execution.